UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR INTERNATIONAL LABOR SOLIDARITY, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 04-01523 (CKK) |

**MEMORANDUM OPINION**
(October 15, 2007)

This insurance coverage dispute arises out of Defendant Federal Insurance Company's ("Federal") denial of coverage for losses incurred by Plaintiff American Center for International Labor Solidarity ("ACILS") in the defense and settlement of an employment discrimination lawsuit.  Federal denied coverage based on ACILS' failure to provide notice of its participation in related United States Equal Employment Opportunity Commission ("EEOC") proceedings which Federal asserted was a "claim" under the insurance policy.  The central question in this case is whether the EEOC proceedings constituted a "claim," where "claim" is defined in the policy to include "a formal administrative or regulatory proceeding commenced by the filing of a notice of charges . . . ."  The Parties have filed cross-motions for summary judgment on this dispositive question.  After a searching review of the Parties' submissions, exhibits, statutes and case law, the Court shall GRANT [18] Defendant's Motion for Summary Judgment and DENY [19] Plaintiff's Motion for Summary Judgment.

## I:  BACKGROUND

### A.      The Federal Insurance Policy

The underlying material facts are undisputed.[1]  Federal issued a Not-for-Profit

Organization Liability Policy ("Federal Policy" or "Policy") to ACILS on July 16, 2002.  Def.'s

Stmt. ¶ 1; Pl.'s Resp. ¶ 1.  The Policy provides coverage to ACILS (and its directors, trustees,

officers and employees) for claims first made between July 16, 2002 to July 16, 2003.[2]  Id.  The

Policy defines "claim" to include a:

> (i)      written demand for monetary damages;
> (ii)     civil proceeding commenced by the service of a complaint
>          or similar pleading;
> (iii)    criminal proceeding commenced by the return of an
>          indictment, or
> (iv)     formal administrative or regulatory proceeding commenced
>          by the filing of a notice of charges, formal investigative
>          order or similar document.

Policy § 22; Pl.'s Stmt. ¶ 6; Def.'s Resp. ¶ 6.

---

[1] As a preliminary matter, this Court strictly adheres to the text of Local Civil Rule 56.1 when resolving motions for summary judgment.  *See DBI Architects v. Am. Express Travel Related Servs. Co.*, Civ. No. 02-1729 (D.D.C. August 22, 2003) (scheduling and procedures order) at ¶ 6 (discussing that the parties are required to comply with Local Civil Rule 7.1(h), which is identical to Local Civil Rule 56.1); *see also Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case). Although discretionary in the text of the Local Civil Rule 56.1, in resolving the instant motions, this Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 56.1.  For purposes of the instant motions, the Court shall cite to Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Issue ("Pl.'s Stmt."), Defendant's Statement Of Material Facts As To Which There Is Not Genuine Dispute ("Def.'s Stmt."), Plaintiff's Response to Def.'s Stmt. ("Pl's. Resp."), and Defendant's Response to Pl.'s Stmt. ("Def.'s Resp.").

[2] The Parties executed a second insurance policy providing coverage from July 16, 2003 to July 16, 2004.  *See* Pl.'s Stmt. ¶ 6; Def.'s Stmt. ¶ 9.  The Policies contain the same relevant coverage provisions.  *See* Def.'s Stmt. ¶¶ 10, 11; Pl.'s Resp. ¶¶ 10,11.  For ease of reference, the Court shall only cite to the July 2002 Policy unless context requires otherwise.

The Policy requires ACILS to give notice to Federal of any claim "as soon as practicable" as "a condition precedent" to coverage.  Federal Policy § 7; Pl.'s Stmt. ¶ 5; Def.'s Stmt. ¶ 5. Although Federal is obligated "to defend any Claim covered by this policy" and to cover all "Losses," Federal also has the right to "make any investigation it deems necessary" and "make any settlement of any Claim it deems expedient."  Federal Policy §§ 1, 8.  Finally, the Policy provides that all "Interrelated Wrongful Acts . . . shall be deemed [one] Loss," and "Interrelated Wrongful Acts" are defined as "all causally connected Wrongful Acts."  Federal Policy § 6; Def.'s Stmt. ¶ 7; Pl.'s Resp. ¶ 7.

> B.     *The Nesbitt EEOC Charge And Lawsuit Against ACILS*

On August 9, 2002, ACILS received a Notice of Charge from the EEOC indicating that a former employee, Mr. Rozell Nesbitt, had filed a Charge of Discrimination (the "Charge") against ACILS.  Def.'s Stmt. ¶ 12; Pl.'s Resp. ¶ 12.  The Charge alleged that ACILS had discriminated against Mr. Nesbitt on the basis of his race in violation of Title VII of the Civil Rights Act of 1964.  Def.'s ¶ 13; Pl.'s Resp. ¶ 13.  The EEOC's notice also stated that "[n]o action is required on [ACILS'] part at this time.  Pl.'s ¶ 9.

On November 14, 2002, ACILS received a second Notice of Charge from the EEOC. Def.'s Stmt. ¶ 15; Pl.'s Resp. ¶ 15.  Unlike the first notice, the EEOC enclosed a two-page "perfected" Charge that described Mr. Nesbitt's claims in more detail.  *Id.  See also* Def.'s Mot. for Summ. J. Ex. F (Nov. 14, 2002 Notice of Charge of Discrimination with attachments).  Also unlike the first notice, the EEOC requested that ACILS either participate in mediation (described as a "voluntary, informal process" in the fact sheet attached to the EEOC notice) or forego mediation and submit to the EEOC a "statement of [ACILS'] position with respect to the allegations contained in this charge" ("Position Statement").  Def.'s Mot. for Summ. J. Ex. F;

Pl.'s Stmt. ¶ 10; Def.'s Stmt. ¶ 16.  ACILS declined mediation and asked its outside counsel to

draft a Position Statement in connection with the Charge.  Pl.'s Stmt. ¶ 11; Def.'s Stmt. ¶¶ 17-18,

20; Pl.'s Resp. ¶ 17.  On December 19, 2002, ACILS' counsel submitted a 16-page Position

Statement, with attachments, reciting ACILS' view of the facts and the law associated with Mr.

Nesbitt's termination.  *See* Def.'s Mot. for Summ. J. Ex. G (Dec. 19, 2002 Letter from M. Gilson

and S. Brown to S. Leon).  The Position Statement indicated that if ACILS' counsel were

provided with additional information from the EEOC or Mr. Nesbitt, it would supplement the

Position Statement.  *See, e.g.*, *Id.* at 10 ("We will respond promptly if provided the names of the

'comparables'" and "[i]f Mr. Nesbitt identifies the relevant individuals, [ACILS] will respond").

The EEOC dismissed Mr. Nesbitt's Charge and issued a Right-to-Sue letter on September

16, 2003.[3]  Pl.'s Stmt. ¶ 13; Def.'s Stmt. ¶ 21.  The letter stated that the EEOC was "unable to

conclude that the information obtained establishe[d] violations of the statutes."  Def.'s Mot. for

Summ. J. Ex. H (Sept. 16, 2003 EEOC Dismissal and Notice of Rights).

On December 12, 2003, Mr. Nesbitt filed a lawsuit in United States District Court for the

District of Columbia against ACILS and Harry G. Kamberis, ACILS' Executive Director.  Pl.'s

Stmt. ¶¶ 2, 14; Def.'s Stmt. ¶ 25.  Mr. Nesbitt's Charge and his lawsuit filed in district court

contain materially similar allegations of discrimination.  *See* Def.'s Mot. for Summ. J. Ex. F

(Nov. 14, 2002 Notice of Charge of Discrimination with attachments) (alleging, *inter alia*,

discrimination based on race); Def.'s Mot. for Summ. J. Ex. H (Dec. 12, 2003 Complaint)

(alleging, *inter alia*, discrimination based on race); Def.'s Mot. for Summ. J. Ex. D at 185 (Feb.

---

[3] Because the EEOC's determination letters also inform aggrieved employees of their rights to sue, these letters are often called "Right-to-Sue" letters. *See, e.g.*, Pl.'s Mot. for Summ. J. at 4 (referring to the "'Right to Sue' notice"); Def.'s Mot for Summ. J. at 6 (referring to the "Right to Sue Letter").

8, 2005) (Deposition of Harry G. Kamberis) (acknowledging that "the allegations made in [Mr. Nesbitt's] lawsuit arise out of the same facts and circumstances that underlie the EEO[C] Charge of Discrimination").

    C.    *ACILS' Claim For Coverage*

    On January 20, 2004, ACILS notified Federal via letter that Mr. Nesbitt had filed a lawsuit against the company and Mr. Kamberis.  Pl.'s Stmt. ¶ 15; Def.'s Stmt. ¶ 30.  In its letter, ACILS requested Federal's consent to have ACILS' outside counsel (the same counsel that drafted its EEOC Position Statement) handle the lawsuit because "time is of the essence in preparing an Answer to the Complaint."  Pl.'s Mot. for Summ. J. Ex. F (Jan. 20, 2004 Letter from K. Doherty to Federal).  ACILS did not reveal to Federal that its outside counsel had knowledge of the matter due to its handling of the EEOC Charge (although the letter does make reference to its counsel being "familiar with the facts that gave rise to [the] lawsuit"), nor did it reference the EEOC Charge itself.  *Id.*

    ACILS' January 20, 2004 letter was the first notification that Federal received concerning Mr. Nesbitt's claims of discrimination against ACILS.  Def.'s Stmt. ¶ 30; Pl.'s Resp. ¶ 30. Federal was not informed of the two EEOC Charges that ACILS had previously received in 2002.  Def.'s ¶ 22; Pl.'s Resp. ¶ 22.  Federal also had not been notified that ACILS had decided to forego informal mediation with the EEOC and have its counsel submit a Position Statement on ACILS' behalf.  Def.'s ¶ 24; Pl.'s Resp. ¶ 24.

    On March 31, 2001, after learning of the EEOC Charge, Federal denied coverage under the Policy because "[t]he Claim submitted to Federal for coverage on or about January 21, 2004 involves a Claim that [Mr. Nesbitt] initially filed against ACILS in July 2002."  Def.'s Mot. for Summ. J. Ex. J (Mar. 31, 2004 Letter from E. Flanagan to K. Doherty); Def.'s Stmt. ¶ 31; Pl.'s

Resp. ¶ 31.  Federal stated that "ACILS failed to satisfy the condition precedent of notifying

Federal of the claim 'as soon as practicable' as required by the Policy."  *Id.*  After several

additional letters were exchanged between the Parties, Federal confirmed its denial of coverage

on June 9, 2004 because "ACILS failed to notify [Federal] of this Claim 'as soon as

practicable.'" Def. Mot. Ex. K (June 9, 2004 Letter from E. Flanagan to J. Collins); Def.'s Stmt.

¶ 32; Pl.'s Resp. ¶ 32.  This suit followed on September 28, 2004.  Def.'s Stmt. ¶ 33; Pl.'s Resp.

¶ 33.

## II:  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to

Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'"  *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be

material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III:  DISCUSSION

### A.      *EEOC Proceedings*

The EEOC is an administrative agency empowered to prevent unlawful employment practices.  *See* 42 U.S.C.S. § 2000e-5(a) (2007).  Any employee claiming to be aggrieved may file a "charge" with the EEOC against an employer.  *See* 42 U.S.C.S. § 2000e-5(b).  Within ten days of receiving a charge, the EEOC must deliver a "notice of charge" to the employer and begin an investigation into the same.  *Id.*

Various regulations set forth the mechanisms by which the EEOC investigates a charge.

*See* 29 C.F.R.§§ 1601.14 *et seq.* (2007).  In some instances, the EEOC may require an employee

claiming to be aggrieved to provide a statement that describes "each specific harm . . . suffered"

or "the act, policy or practice [that] is discriminatory."  29 C.F.R. § 1601.15(b).  In the course of

its investigation, the EEOC will also consider any "statement of position or evidence with respect

to the allegations of the charge" from any party, including an employer.  29 C.F.R. § 1601.15(a).

As part of its investigatory role, the EEOC may hold a fact-finding conference with the parties

intended "to define the issues, to determine which elements are undisputed, to resolve those

issues that can be resolved and to ascertain whether there is a basis for negotiated settlement of

the charge."  29 C.F.R. § 1601.15(c).   The EEOC also has the authority to subpoena the

attendance and testimony of witnesses or the production of evidence.  *See* 29 C.F.R. §§

1601.16(a), 1601.17(a).  Where a person fails to comply with such a subpoena, the EEOC may

initiate proceedings to compel enforcement.  *See* 29 C.F.R. § 1601.16(c), (d).[4]

If the EEOC completes its investigation and finds "there is no reasonable cause to believe

that an unlawful employment practice has occurred or is occurring," the EEOC issues a "letter of

determination to the parties indicating the finding."  29 C.F.R. § 1601.19(a).  The letter of

determination also informs the employee that he or she may sue in federal court.  *See Id.*

Conversely, if the EEOC finds that reasonable cause exists that an unlawful employment practice

has occurred or is occurring, it may attempt to eliminate the practice through "informal methods

of conference, conciliation and persuasion."  29 C.F.R. § 1601.24(a).  If resolution is not reached,

the EEOC is empowered to bring a civil action against the employer named in the charge.  *See* 29

---

[4] The regulations described in these provisions differ somewhat from those pertaining to
federal employees.  Unlike private sector charges of discrimination, the EEOC may hold
evidentiary hearings before an administrative law judge who has the authority to order
"appropriate remedies and relief where discrimination is found" for claims brought by federal
employees.  *See* 29 C.F.R. § 1614.109(a), (i).

C.F.R. § 1601.27.

Although EEOC investigations are not binding in the sense that they do not adjudicate liability or result in appealable determinations, the proceedings do have consequences for the parties in subsequent lawsuits. For example, materials such as Position Statements may be admissible as evidence of party admissions or for purposes of witness impeachment. *See, e.g.,* *Gage v. Metro. Water Reclamation District of Greater Chicago*, 365 F. Supp. 2d 919, 936-37 (N.D. Ill. 2005) ("'[a]n employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts'") (quoting *Frazier v. Ind. Dep't of Labor*, 2003 U.S. Dist. LEXIS 9073 at *5 (S.D. Ind. Mar. 17, 2003)). The EEOC's reasonable cause determinations are also potentially admissible as evidence. *See Wade v. Washington Metro. Area Transit Auth.*, Civ. A No. 01-0334, 2006 U.S. Dist. LEXIS 16447 at *12 (D.D.C. Apr. 5, 2006) ("[t]he Supreme Court has explained that 'prior administrative findings made with respect to an employment discrimination claim,' e.g., EEOC determinations, are admissible under [the Federal Rules of Evidence]") (quoting *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976)).

B.      *The Federal Policy Language*

Armed with the familiar rules of insurance policy interpretation, the Parties disagree as to whether the EEOC proceedings in this matter are properly characterized as a "formal administrative . . . proceeding commenced by the filing of a notice of charges . . . ." ACILS argues that the word "formal" is ambiguous, and "[i]t is axiomatic that when 'constru[ing] . . . policies of insurance . . . any reasonable doubt which may arise as to the meaning or intent of a condition thereof, will be resolved against the insurer.'" Pl.'s Mot. for Summ. J. at 6 (quoting

*Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999)).  Because ACILS

asserts that the EEOC proceedings cannot be considered "formal administrative proceedings," it

argues that ACILS was not required "to treat [Mr.] Nesbitt's EEOC charge as a 'claim' triggering

the Policy's notice requirement."  Pl.'s Mot. for Summ. J. at 11.  In contrast, Federal argues that

EEOC proceedings "unquestionably" fall within the Policy's definition of claim, Def.'s Mot. for

Summ. J. at 9, and "clear and unambiguous" insurance provisions must be enforced as written.

*Id.* at 14 (quoting *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1132 (D.C. 2001)).

Federal also explains that disagreement among the parties as to the meaning of a provision is not

enough to create an ambiguity where none otherwise exists."  *Id.*; *See Cameron*, 733 A.2d at 968

("an insurance contract is not ambiguous 'merely because the parties do not agree on the

interpretation of the contract provision in question'") (quoting *Byrd v. Allstate Ins. Co.*, 622 A.2d

691, 694 (D.C. 1993)).

    As an initial matter, EEOC proceedings are unambiguously "administrative proceedings."

*See Friends v. Astrue*, Civ. A. No. 061762, 2007 U.S. Dist. LEXIS 48161 at *12 n. 6 (D.D.C.

Jul. 5, 2007) (referring to an EEOC action as an "administrative proceeding"); *Gallagher v. Gelb*,

Civ. A No. 901145, 1990 U.S. Dist. LEXIS 9510 at *3 (D.D.C. Jul. 30, 1990) (same), *aff'd* 988

F.2d 1280 (D.C. Cir. 1993).  EEOC proceedings are also unambiguously "commenced by a

notice of charges."  *See* 42 U.S.C.S. § 2000e-5(b) (requiring the EEOC to deliver a "notice of

charge" to an employer); Def.'s Mot. for Summ. J. Ex. C (EEOC "Notice of Charge").  The

central issue in this case is whether ACILS is correct that the word "formal" excludes EEOC

proceedings from the definition of "formal administrative . . . proceeding commenced by the

filing of a notice of charges . . . ."

    EEOC proceedings certainly appear to possess the trappings of formality.  As detailed

above, nearly all aspects of the EEOC's proceedings are prescribed by statute or regulation.

Among other things, the EEOC's regulations set forth the flow of information to and from the

EEOC, the procedures that must be observed during an investigation of a charge of

discrimination, and the procedures associated with the EEOC's determinations concerning

whether a discriminatory practice has occurred or is occurring.  *See* 29 C.F.R. §§ 1601.14 *et seq.*

*See also Jackson v. Richards Med. Co.*, 961 F.2d 575, 581-82 (6th Cir. 1992) (setting forth the

various procedures followed by the EEOC).  Among the more specific regulations, the EEOC is

empowered to receive evidence, listen to witness testimony, subpoena documents and witnesses,

and initiate proceedings to compel enforcement.  *See* 29 C.F.R. §§ 1601.14 *et seq.*  In addition,

the EEOC's investigations produce significant consequences for the parties.  A finding of

"reasonable cause" may be submitted in a subsequent lawsuit against an employer and a "no

reasonable cause" determination may be used as evidence against an employee claiming to be

aggrieved.  *See Wade*, 2006 U.S. Dist. LEXIS 16447 at *12.  Party submissions such as Position

Statements may also be used as evidence.  *See Gage*, 365 F. Supp. 2d at 936-37.

　　　Despite these regulations and the potential consequences arising from the proceedings,

ACILS argues that EEOC proceedings cannot be characterized as "formal" because the EEOC

uses "informal methods of conference, conciliation, and persuasion," 42 U.S.C. § 2000e-5(b),

and cannot "'adjudicate the rights and liabilities [of the employer]' or award monetary damages."

Pl.'s Mot. for Summ. J. at 7 (quoting *EEOC v. Sears, Roebuck & Co.*, Civ. A No. 791957, 1980

U.S. Dist. LEXIS 11097 at *18 (N.D. Ga. Mar. 14, 1980)).  This argument fails because it merely

identifies several differences between EEOC proceedings and litigation.  While an insurance

policy may certainly characterize litigation as a type of formal proceeding, there is no reason why

litigation is the *only* type of proceeding that may be characterized as formal.  In fact, the Federal

Policy contemplates proceedings that are *not* litigation but are nonetheless "formal."  *See* Federal

Policy § 22 (defining claim to include both a "civil proceeding commenced by the service of a

complaint" and a "formal administrative . . . proceeding commenced by the filing of a notice of

charges").  ACILS concedes as much by recognizing that administrative proceedings undertaken

pursuant to a rule or statutory requirement might "in that limited sense" be considered formal.

Pl.'s Opp. at 17.  To that end, simply because the EEOC cannot impose liability or adjudicate

rights does not eviscerate this formality.

The cases cited by ACILS do not suggest otherwise.  One line of cases identifies

decisions where courts have interpreted "claim" to exclude EEOC proceedings, where "claim"

was left undefined in the policy.  *See, e.g.*, *Bensalem Twp. v. W. World Ins. Co.*, 609 F. Supp.

1343, 1347-49 (E.D. Pa. 1985).  These cases have no bearing on the instant motions because the

Federal Policy *does* include a definition of "claim," and the disagreement among the Parties is

whether an EEOC proceeding constitutes a "formal administrative proceeding," not whether it

constitutes a "claim" in the abstract.  A second line of cases cited by ACILS are decisions of

various courts, including the United States Supreme Court, that refer to certain aspects of EEOC

proceedings as informal.  *See, e.g.*, *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368 (1977)

(referring to the EEOC's role as one of "investigating claims of employment discrimination and

settling disputes, if possible, in an informal, noncoercive fashion"); *Johnson v. Railway Express*

*Agency, Inc.* 421 U.S. 454, 473 (1975) (Marshall, J., dissenting) ("[l]egislative pains to avoid

unnecessary and costly litigation by making the informal investigatory and conciliatory offices of

EEOC readily available to victims of unlawful discrimination cannot be squared with the formal,

mechanistic requirement of early filing for technical purpose of tolling a limitations statute").

Although ACILS is correct that each of the cases discusses aspects of EEOC proceedings as

informal, none of these courts evaluate EEOC proceedings in the context of an insurance policy

that defined "claim" as a "formal administrative proceeding."  Not surprisingly, other courts have

made references to the *formalities* associated with EEOC proceedings.  *See, e.g.*, *Edelman v.*

*Lynchburg Coll.*, 535 U.S. 106, 115 n.9 (2002) ("The general practice of EEOC staff members is

to prepare a formal charge of discrimination for the complainant to review and to verify . . .");

*EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 854 (8th Cir. 1978) ("the EEOC's formal

investigation began").  Because none of these courts construed EEOC proceedings in the context

of an insurance policy defining "claim" as a "formal administrative proceeding," these decisions

do not advance either Parties' arguments.[5]

 ACILS' interpretation of the Policy is all the more difficult to accept because excluding

"EEOC proceedings" from the Policy's definition of "claim" results in an awkward interpretation

of the Policy provision.  *See* Federal Policy § 22.  Under ACILS' interpretation, the phrase

"formal administrative or regulatory proceeding commenced by the filing of a notice of charges,

formal investigatory order, or similar document" excludes a subset of informal proceedings

commenced by the filing of a notice of charges.  Pl.'s Mot. for Summ. J. At 11 n.6.  If this

interpretation were correct, it would also mean that the Policy excludes a subset of *informal*

proceedings commenced by the filing of a "*formal* investigative order."  Although problematic

because of the grammatical inconsistency, the same interpretation was also flatly rejected by the

only other court to have examined the Federal Policy language at issue in this case.  *See Nat'l*

*Stock Exch. v. Fed. Ins. Co.*, Civ. A No. 06C1603, 2007 U.S. Dist. LEXIS 23876 at *8-*11 (N.D.

---

 [5] For the same reason, the Court finds unpersuasive the cases cited by Federal holding
that EEOC proceedings are "claims," but where the insurance policies contained a broader
definition of "claim" than the one in the instant proceeding.  *See, e.g.*, *Specialty Food Sys., Inc. v.*
*Reliance Ins. Co. of Illinois*, 45 F. Supp. 2d 541, 543 (E.D. La. 1999) (defining "claim" to
include "any administrative proceeding").

Ill. Mar. 30, 2007).  In *Nat'l Stock Exch.*, the Securities and Exchange Commission ("SEC")

launched an investigation of plaintiff's regulatory programs related to equity trading.  *Id.* at *3.

As part of the investigation, the SEC requested production of documents and witness testimony.

*Id.*  Plaintiff sought coverage from Federal for the fees and costs associated with defending the

SEC's investigation.  *Id.* at *4.  Defendant Federal argued that the plaintiff did not have a valid

claim to submit for coverage until the SEC initiated various administrative and cease-and-desist

proceedings.  *Id.* at *8.  The Policy defined "claim" to include, as in this case, a "'formal

administrative or regulatory proceeding commenced by the filing of a notice of charges, formal

investigative order, or similar document.'" *9 (emphasis omitted).

Defendant Federal argued that the SEC investigation did not fall within the definition of a

"claim" because an investigation is not a "formal administrative or regulatory proceeding."  *Id.*

The court rejected Federal's argument and reasoned that a "formal investigative order" must

initiate a "formal administrative or regulatory proceeding," or it would otherwise lack meaning.

*Id.*  In the instant case, ACILS' interpretation of the Policy that posits the existence of informal

administrative proceedings that are commenced by the filing of a notice of charges is equally

implausible.  ACILS is unable to identify (beyond the EEOC proceedings in the instant case) the

types of informal proceedings commenced by a filing of notice of charges or formal investigative

orders that it believes are excluded from the Policy.  *See* Def.'s Reply at 9 n.7.  In contrast,

Federal interprets the Policy language to exclude "formal administrative proceedings that are *not*

commenced by a notice of charges aimed at an individual insured, such as a ratemaking or

rulemaking proceeding directed at an entire class of persons or entities."  *Id.*

Just as the Court discussed the EEOC regulations above, the *Nat'l Stock Exch.* court also

examined the various regulations associated with SEC investigations to further support its

conclusion that a SEC investigation is a formal administrative or regulatory proceeding. *Id.* at

*10-*11.  Specifically, the court found that the SEC is empowered to, among other things, take

testimony, receive evidence, subpoena witnesses, and compel witness attendance. *Id.*  Because

of these regulations, the court had "no difficult concluding that the policy language 'formal

investigative order or similar document' included an SEC order which commences a 'formal

investigative proceeding.'" *Id.* at *11.  Like the SEC proceedings discussed in *Nat'l Stock

Exchange*, the EEOC is empowered to take testimony, receive evidence, subpoena witnesses, and

compel witness attendance through initiation of enforcement proceedings. *See* 29 C.F.R. §§

1601.15 *et seq.*  Based on the above, the most natural reading of the Policy language is that an

EEOC administrative proceeding commenced by the filing of a notice of charges is a "formal

administrative . . . proceeding commenced by the filing of a notice of charges . . . ."

    The Court must also construe the Federal Policy "as a whole" and give effect to all of its

provisions. *Dist. of Columbia Ins. Guar. Ass'n v. Nat'l R.R. Passenger Corp.*, 721 F. Supp.

1378, 1381 (D.D.C. 1989) ("[i]n viewing insurance contracts the Court should look to the entire

instruments and all of their provisions to ascertain their meaning and construe such contracts as a

whole") (citing 13 J.A. Appleman & J. Appleman, Ins. Law & Prac. § 7383 (rev. ed. 1976), *aff'd*

925 F.2d 488 (D.C. Cir. 1991)).  In doing so, the Court finds that ACILS' interpretation of

"claim" eviscerates Federal's rights to notice as set forth in the Policy. *See MDB Commc'n, Inc.

v. Hartford Cas. Inc. Co.*, 479 F. Supp. 2d 136, 145 (D.D.C. 2007) ("'It is in order to promote the

efficient and economic liability insurance administration that such [notice] provisions are given

effect in the interest of the public as well as the insurer.'") (quoting *Diamond Serv. Co. v. Utica

Mut. Ins. Co.*, 476 A.2d 648, 652 (D.C. 1984)).  Specifically, the Policy prevents ACILS from

doing anything "that may prejudice [Federal's] position or its potential or actual rights of

recovery."  Federal Policy § 7.  ACILS also may not "settle any Claim, incur any Defense Costs,

assume any contractual obligation or admit any liability with respect to any Claim without

[Federal's] written consent."  *Id.* at § 8.  Federal expressly reserves the right to initiate any

investigation it deems necessary and "make any settlement of any Claim it deems expedient."  *Id.*

ACILS' participation in the EEOC proceedings was inconsistent with Federal's rights

under the Policy.  For example, ACILS potentially prejudiced Federal's position by asking its

outside counsel to draft a Position Statement reciting the Company's views of the facts and legal

authority associated with Mr. Nesbitt's Charge of Discrimination.  ACILS' decision not to

participate in informal and voluntary mediation is also inconsistent with these notice provisions

because Federal expressly reserved the right to investigate and settle any claim in deemed

expedient.  ACILS's decision to reject mediation also delayed Federal's ability to investigate Mr.

Nesbitt's allegations until after a lawsuit had already been filed.  The Policy's definition of

"claim" must be read to include such EEOC proceedings to preserve Federal's notice rights under

the Policy.[6]  Where a party actively engages in such proceedings by unilaterally rejecting

informal mediation and having its counsel draft a written legal and factual Position Statement,

the Court has no trouble concluding that the party can be said to have engaged in a "formal

administrative . . . proceeding commenced by the filing of a notice of charges . . . ."[7]

---

[6] ACILS even admits its decision potentially had *some* effect on Federal.  See Pl.'s Reply at 8 (the "risk to the insurer from not becoming involved at [the EEOC] stage is small.").

[7] Both Parties posit other minor arguments that have been considered by the Court but have been found to lack merit.  For example, ACILS submits for consideration the policy of a different insurance company that explicitly defines "formal administrative proceeding" to expressly include "EEOC proceedings."  *See Pl.'s Opp.* at 12 & Ex. 2.  ACILS argues that the insurance company issuing this policy thought the phrase "formal administrative proceeding" was ambiguous because it expressly included "EEOC proceedings" in the definition.  *Id.*  Far from proving an ambiguity, the policy appears to explicitly support Federal's argument that EEOC proceedings are *included* within the definition of "formal administrative proceeding."

C.      ACILS' Notice

Consistent with the foregoing analysis, the Court finds that ACILS participated in a "formal administrative . . . proceeding commenced by the filing of a notice of charges . . ." by receiving an EEOC charge, denying involuntary and informal mediation, and asking its counsel to submit a 16-page Position Statement (with attachments) reciting ACILS' view of the facts and law at issue.[8]  Because "claim" is defined in the Policy to include a "formal administrative . . . proceeding commenced by the filing of a notice of charges . . .," ACILS failed to notify Federal of a claim in 2002.  ACILS concedes that "i[f] the charge constituted a "claim," ACILS . . . did not give timely notice of that "claim."  Pl.'s Opp. at 1 n.1.

D.      Related Claims

One final issue remains.  In its Motion for Summary Judgment, ACILS argues that Federal is obligated to cover the defense and settlement costs associated with Mr. Nesbitt's lawsuit as it pertains to Mr. Kamerbis, ACILS' Executive Director, as he was not identified as a party in the original EEOC charge of discrimination.  *See* Pl.'s Mot. for Summ. J. at 11.  ACILS' authority for this proposition is *Ryland Mortgage Co., Inc. v. Travelers Indem. Co. of Illinois*, which explained that an insurance company could not apportion defense costs between covered and uncovered parties "'based simply on the fact that an item of legal service or expense would

---

Another example is Federal's submission of an arbitration decision, where an arbitration panel suggested that EEOC proceedings could be considered "formal."  *See* Def.'s Mot. for Summ. J. Ex. P at 11.  In the decision, however, the panel expressly stated that "it was not deciding the question" of whether the EEOC proceedings were properly characterized as formal.  *Id.* at 12.

[8] Based on the facts of the instant case and the Court's disposition of the same, the Court does not reach the issue of whether an initial EEOC notice which requires no action on the part of an employer would constitute, by itself, a "formal administrative proceeding."  Instead, the receipt of the second EEOC notice which required ACILS' participation, and the subsequent actions and decision of ACILS, are more than sufficient in the instant case to conclude that ACILS participated in a formal administrative proceeding.

also be of use to counsel in defending [an uncovered party] . . . in addition to its use in defending a [covered party].'" Pl.'s Mot. for Summ. J. at 12 (quoting 177 F. Supp. 2d 435, 440-41 (D. Md. 2001), *aff'd* 70 Fed. Appx. 673 (4th Cir. 2003)).

ACILS' argument lacks merit because it presupposes that Federal is obligated to provide coverage for Mr. Kamberis.  The Federal Policy, however, specifies that "all Interrelated Wrongful Acts of any Insured shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Year in which a Claim is first made against any Insured." Federal Policy § 6.  The Policy defines "Interrelated Wrongful Acts" as all "causally connected Wrongful Acts."  Federal Policy § 22.  In the instant matter, Mr. Nesbitt's EEOC Charge and lawsuit arise out of the same causally connected facts.  *See* Def.'s Mot. for Summ. J. Ex. D at 181, 185-88 (Deposition of Harry G. Kamberis) (agreeing that "the allegations made in [Mr. Nesbitt's] lawsuit arose out of the same facts and circumstances that underlie the EEOC Charge of Discrimination").  Thus, under the terms of the Federal Policy, there is only a single loss to be claimed under the Policy, and not a separate "claim" as to Mr. Kamberis individually.[9]

---

[9] There are other problems with ACILS' argument.  It is unclear what costs Federal would be obligated to cover because Mr. Kamberis did not incur any costs, fees, or other losses that would require coverage, nor did he submit an individual claim to Federal.  *See* Def.'s Mot. for Summ. J. at 21 & Ex. D at 44-45 (Deposition of Mr. Kamberis).  Another problem is that ACILS failed to address Federal's counter arguments and corresponding authority, relegating its own argument to one sentence in a footnote in its Opposition brief, and then failing to mention it altogether in its Reply.  ACILS' silence with respect to its argument suggests that it has been conceded.  *See, e.g.*, *Speaks v. D.C.*, Civ. A. No. 031963, 2006 U.S. Dist. LEXIS 16776 at *12 n.1 (D.D.C. Apr. 6, 2006) ("Defendant's summary judgment motion seized upon these deficiencies in the record, yet Plaintiff's opposition papers are silent on the issue, which arguably provides an independent basis for treating Defendant's argument as conceded").

**IV:  CONCLUSION**

For the reasons set forth above, the Court shall GRANT [18] Defendant's Motion for

Summary Judgment and DENY [19] Plaintiff's Motion for Summary Judgment.  An appropriate

Order has been issued.


Date:   October 15, 2007

                                        _/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge